## Case No. 1,509.

### BLANCHARD v. ELDRIDGE.

[47 Jour. Fr. Inst. 259.]

Circuit Court, E. D. Pennsylvania. March 8, 1849.

PATENTS—SPECIFICATIONS — DESCRIPTION — CONSTRUCTION OF PATENT — LIMITATION—MACHINE FOR TURNING IRREGULAR FORMS.

[1. While the patent law requires that the patentee shall show in his specifications the most beneficial mode of applying his invention, it does not require that he shall point out all the possible contrivances by which the principle can be applied.]

[2. The Blanchard patent for a machine for turning irregular forms, being properly construed, covers in substance a tracer so arranged as to pass in a spiral or helical line over the surface of a revolving model, while the rough material revolves in a similar line under a cutter guided by the tracer, but acting with an independent, rapid motion; and infringement cannot be avoided by changing the cutter in details of construction or method of operation.]

[In equity. Suit by Thomas Blanchard against Eldridge for infringement of complainant's patent for a machine for turning irregular forms. Decree for complainant. Defendant's motion for a new trial denied. Blanchard v. Eldridge, Case No. 1,510. Plaintiff now moves for attachment against defendant for breach of injunction. Attachment awarded.]

Saunders Lewis, for complainant.

W. L. Hirst, for respondent.

KANE, District Judge. The patent right of Mr. Blanchard has been the subject of examination before me in two trials at law, the present defendant being a party. Although no verdicts were rendered, I was fully satisfied by the evidence, that the patent was a highly meritorious one, of ancient date, and that the defendant had violated it. I did not hesitate, therefore, to grant an injunction against him, upon the proper proceedings being executed in equity. This injunction being still in force, the defendant devised a new machine, and is now using it as the complainant asserts, in violation of the injunction. The question is thus presented, whether the new machine of the defendant infringes the complainant's patent right.

In my charge to the jury on the other side of this court, I spoke of Mr. Blanchard's machine as follows: "It is a turning machine, capable of producing with rapidity from the rough material, by a single operation, an irregular form, similar or proportional in all respects to a given model. It consists essentially of a model revolving in contact with a friction tracer, while the rough material revolves, with the same velocity, in like contact with a rapidly moving cutter wheel; either the model and material, or else the friction tracer and cutting wheel, having a progressive lateral motion, so that by the revolutions of the model and the material, all the points of their respective surfaces are presented in succession to the touch of the friction tracer and the action of the cutter respectively; that is to say, all the points on the surface of the model successively to the touch of the tracer, and the corresponding points on the surface of the material to the action of the cutter wheel. Its value consists in this, that it combines the accurate imitation of a slowly revolving model, with the rapid action of a cutter wheel. Its principle is the combination of the cutter wheel, model, and friction tracer, with the arrangement for effecting the lateral motion."

Between this and the respondent's present machine, there appears to be but a single point of difference. "The peculiar novelty of the respondent's machine, according to the report of the commissioner, William W. Hubbell, Esq., appears to be in the formation, suspension, and matter of propelling the cutting instrument, to shape the last from the rough block, without finishing. The cutting instrument consists of a double edged curved knife of about the same curve or periphery as the friction column; it is bolted to a perpendicular iron bar, about an inch square, which plays up and down between and through two iron straps, fastened to the main transverse carriage. This cutting instrument receives its motion from a pitman, attached to a crank, put in very rapid revolution, and thereby with great velocity moves the cutting instrument in a straight perpendicular line up and down, which being sharp on both the upper and lower edges, in passing the rough material, cuts it both in its ascent and descent. Attached to the crank shaft are a fly wheel and a balance weight."

The two machines, then, have the same object; and they attain it by the same means, operating in the same manner, except that Mr. Blanchard's cutters are set on the periphery of a wheel, and act in the curved line of its motion, while in Mr. Eldridge's, the circular motion is transferred to a shaft, and the cutters, being affixed to this, act with an alternating movement in a right line.

It is not contended that the shaft is an improvement on the wheel, that it is more economical of structure or use, or that it does its work more effectively or rapidly. On the contrary, it is evident that, if well made, it must be more costly at first, that it must exact the expenditure of more power in working, must do the work less rapidly

and less perfectly, and must be less durable. The only question to be decided is whether it differs in principle, or by a modification of details merely, a substitution of equivalents, —whether, in a word, it is or is not an evasion of the complainant's patent.

I have heretofore spoken of the principle of the patented machine, as involving the combination of a cutter wheel with certain other parts. This language was sufficiently accurate, perhaps, for the purposes of the occasion, since there was then no controversy regarding a machine without a cutter wheel. But it was rather a description of Mr. Blanchard's machine as in use, than a definition of its principle. In his specification he says: "Moreover the cutters may be made sharp on both edges, and the cutter wheel may be made to turn a quarter circle or less, backward and forward, and so the cutters be made to cut by both edges, but the continued circular movement is believed to be preferable to any other."

Now, when the cutters are acting with this alternate or reciprocating motion, they can scarcely be considered as moving on a cutter wheel, implying, as this does, the idea of continuous rotation. The abstract principle, therefore, that shall include both forms of structure, cannot recognize the cutter wheel, strictly speaking, as an element of the combination, but rather a cutter, or series of cutters, deriving motion from a circle, and acting in a circular arc. If this were the correct definition of Mr. Blanchard's principle, the difference between the two machines would be resolved very easily. One, the patented, applies the revolving power, immediately to its work, in the most simple, convenient, econominal, and effective mode;—the other, the defendant's, interposes between the revolving power and the work an additional member, that serves no purpose whatever, unless to avoid identity with the patented machine.

The patent law would give but an illusory protection to the meritorious inventor, if it respected devices like this. It requires of a patentee, that he shall disclose in his specification the most beneficial mode of applying his principle that is known to him. Neilson's Patent, Webster, Pat. Cas. 337. But it does not require of him to go further, and point out all the possible contrivances by which the machine that illustrates his principle can be rendered less beneficial or less perfect. The more fully matured his discovery, the more complete in all its parts, the more signally and immediately profitable to the community,—the greater will be the number of the defects it has avoided or provided for, and the greater, of course, the number of changes for the worse that may be grafted upon it by a froward ingenuity. For surely ingenuity may be so styled, when it toils with inverted energies, not to improve or advance, but to devise something less useful and more costly than that which was known before.

But in truth, the principle of Mr. Blanchard's invention calls for a less restricted definition than that which I have for the moment assumed. Strike out from his specification all the details of structure, or look through them into the inventive idea, the essential principle that resides within, and what do we find? A tracer, so arranged as to pass in a spiral or helix line over the surface of a model, while the rough material revolves in a similar line under a cutter, guided by the tracer, but acting with independent, rapid motion,—the combination of these for a declared purpose; this is the principal of the Blanchard patent. All the rest is detail, properly introduced into the specification, as exhibiting "the most beneficial mode of applying the principle," but essentially forming no part of it.

Now although it be true, that, technically speaking, an inventor cannot claim a patent for the principle he has discovered, yet it is equally true that, if he has embodied it in any clear, definite and distinct form, others will not be permitted to take that principle and embody it in some other form merely copied from his; "and thus," as well argued in the case I have cited, "you may attain a result which is practically equivalent to the patenting of a principle;" for when you have put your intention into shape, no person will be allowed to come in and steal the spirit of your invention, by putting it into some other shape, which, though different, is imitated from yours.

The defendant in this case has mistaken his legal rights; and the sooner he is advised of his error, the better for him and the public. He is obviously possessed of considerable mechanical ingenuity, which, if applied in a different direction, may advance his own interests, while contributing incidentally to the interests of art. But he has confounded the details of Mr. Blanchard's machine with its principle; and in seeking to escape from the operation of the patent, he has violated the law by which it is guarded. It is possible that he may have been misled by the language of the charge, when his case was before me on the law side of the court. Abstract propositions are liable to inaccuracy, when elicited in the haste of a trial at bar; and however accurate, they are not suited to the purpose of imparting instruction to a jury. I prefer, therefore, generally to employ illustrations, derived from the case itself, to convey the legal principle which should rule it, rather than to announce the law in general and abstract terms. It is enough for me if I can succeed in teaching all that belongs to the circumstances and the time. This consideration, however, of the possibility of my having been misunderstood, will have its influence with me in the future stages of this proceeding; and the attachment which I feel it my duty to award will be set aside on payment of costs, upon my receiving an assurance from the defendant, that he will de-

sist from violating the complainant's patent any further.

Attachment awarded.